Verlon Nance

*v.*

State of Tennessee.

358 S.W.2d 327.

(*Knoxville*, September Term, 1961.)

(May Session, 1962.)

Opinion filed June 5, 1962.

ROBERTS & WEILL, Chattanooga, FRANK M. GLEASON, Rossville, for plaintiff in error.

330

GEORGE F. McCANLESS, Attorney General, WALKER T. TIPTON, Assistant Attorney General, Nashville, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiff in error was indicted for murder in the first degree and under this indictment was convicted of voluntary manslaughter and sentenced to serve a maximum of ten (10) years in the State penitentiary, from which judgment he has seasonably appealed.

On November 12, 1960, one John Holloway was shot and killed in a beer tavern in the City of Chattanooga. The record shows that the plaintiff in error entered this beer tavern shortly before eight o'clock on that night, took a position at the bar directly across from the door of the tavern. While the plaintiff in error was standing at this bar, a man came up to him and informed him that the deceased was in the back and was going to cause

trouble. About this time the deceased came upon the plaintiff in error from the rear of the building. Some words were exchanged, and, according to the plaintiff in error, the deceased pulled out a knife. When the knife was produced the plaintiff in error drew a pistol which he was carrying and shot the deceased twice. The deceased then turned and staggered to the rear of the building where he collapsed, falling face down on the floor near the restaurant door. The plaintiff in error then walked to the rear of the building and fired a third shot into the head of the deceased. It was shown on the trial that the cause of the death of the deceased was the wound in the head. It is further shown that the deceased had a reputation in the community of being ''bad with a knife'', and that the deceased and the plaintiff in error had had previous difficulties. What we have said in this brief summary are the facts, or what the facts show, that could have been found by the trier of facts.

At the close of the State's proof the plaintiff in error made a motion for a directed verdict in his behalf. This motion was overruled, but is insisted upon here. We in this State have never approved the granting of a directed verdict in a criminal case. *Sherrill v. State,* 204 Tenn. 427, 321 S.W.2d 811. The underlying reason for this rule is that if a directed verdict is granted the defendant cannot be tried again, and it is deemed best and wisest for this Court, a court of appellate jurisdiction, to have all the facts before it before such action should be taken. This Court has somewhat the advantage of the trial court in that it can and should have the evidence all where it can be seen and understood in writing before it, and in this way can determine whether or not there is sufficient evidence to go to a jury on the

question. This determination is not as easy for the trial judge because the trial judge must depend upon his recollection as to what the evidence shows, and it is not all before him as it is before an appellate court. There is sufficient evidence in this case, as determined by the court below, for the questions here presented to be passed upon by a jury. Thus the motion for a directed verdict was properly overruled.

As said above, this record clearly shows that after the deceased was shot twice, even though the plaintiff in error had a right to defend himself under the circumstances as he saw them at the time, when the plaintiff in error followed the deceased to the rear of the building and then shot him in the head, and this third shot was the shot that caused the death, then clearly under such facts, murder in the second degree could be established, as it may be established by the proof of a deadly weapon which raises a presumption of malice sufficient to sustain murder in such a degree, unless it is rebutted by other facts and circumstances. *Lewis v. State*, 202 Tenn. 328, 304 S.W.2d 322.

The argument herein is primarily based upon the fact that the deceased should have been killed, and that the plaintiff in error was well within his rights of self-defense in committing the homicide. In order to prevail upon a defense of self-defense, the plaintiff in error must show that he acted upon a well founded apprehension of great bodily harm. *Cathey v. State*, 191 Tenn. 617, 235 S.W.2d 601. When the record shows though, as it does here, that the plaintiff in error followed and administered a third shot after the deceased had retreated and was falling to the floor, this obviously takes

away the degree of self-defense that is necessary to excuse the homicide, because when the deceased had put himself in this position there was no reason for any apprehension of great bodily harm on the part of the plaintiff in error. This being true, the necessary element of self-defense above discussed was absent when the fatal shot was fired, and thus the killing was not excusable. Wharton's Criminal Law, 12th Ed., sec. 613, page 828.

There are two primary questions insisted upon here wherein it is said that a reversal should be granted. These are (1) that the trial judge committed reversible error in allowing a witness to testify on rebuttal, after this witness, in the judgment of the trial court, had violated the rule of the trial court against sequestration of witnesses; and (2) the trial judge erred in not polling the jury after that body had returned its verdict in open court.

Since probably the beginning of time in the trial of cases witnesses have been sequestered by order of the court on motion of counsel on either side. Our earliest reported case on the subject is *Nelson v. State,* 32 Tenn. 237. Obviously this rule, or expedient, is designed to detect falsehood as well as to prevent any witness from coloring his, or her, testimony either purposely or through influence by talking to other witnesses and hearing them talk. An interesting discussion and summary of the question under consideration may be found in Wharton's Criminal Evidence, 12th Ed., Anderson, Vol. 3, sec. 840, page 260, et seq. At page 209 of this work, it is said:

"The violation of the order of sequestration does not in itself make the witness incompetent or compel his exclusion", citing authorities from many states.

In the instant case the trial judge placed the witnesses under "the rule". In other words, he sequestered the witnesses. The record shows that during the morning session three of the State's witnesses were taken to the office of the Assistant District Attorney General for consultation. The record shows that each witness was talked to at that time separately out of the presence of other witnesses and only their testimony was discussed. It is also shown that none of the proof that had been offered up to that time was discussed. When these witnesses were attempted to be called, this fact was brought to the attention of the trial judge, and he granted the plaintiff in error's motion and barred these witnesses from testifying. After the trial judge had overruled plaintiff in error's motion for a directed verdict, the plaintiff in error took the stand and testified in his own behalf. A rigid cross-examination of the plaintiff in error brought out the fact that he had made a written statement in which he admitted going to the back of the tavern and firing this third shot, etc. These facts though were attempted to be denied by the plaintiff in error when he took the stand. Thus as a result of this at the close of the plaintiff in error's proof the State sought to put one of the witnesses, who had been sequestered and barred, on the stand to testify in rebuttal. The trial judge admitted this testimony on the theory that since the plaintiff in error had testified, and testified to certain things, the State was entitled to rebut this through one of these witnesses. The trial judge thus exercised his discretion in permitting this testimony.

Many cases from various jurisdictions are cited by the plaintiff in error supporting his proposition that the calling of this witness after he had been sequestered violated this rule against sequestration, that the trial court committed error in allowing the witness to testify. Our examination and reading of these cases though show clearly that none of the facts in any of the cases are comparable to those here, because it is found that this subsequent testimony put the plaintiff in error, or defendant or whatever you might call him in those cases, in a position so that he did not get a fair trial.

■ It is the settled law of this State that the matter of placing witnesses under, or exempting them from, the rule is within the discretion of the trial judge, and that his action will not be reversed unless it is made to appear that the court abused his discretion, and that such abuse worked to the prejudice of the complaining party. *Pennington v. State,* 136 Tenn. 533, 190 S.W. 546, and authorities therein cited. This Court there, speaking through the late Chief Justice Grafton Green, held that the trial court would not be put in error when there are circumstances justifying the action on the part of the trial court similar to that herein done. We think that this record clearly justifies the action of the trial court, and his discretion in so doing certainly has not been abusive. A related incident happened in the case of *Bass v. State,* 191 Tenn. 259, 231 S.W.2d 707, the Court there speaking through Special Justice, Mr. Albert Williams. The Court noted there that even if such testimony should not be regarded as rebuttal it was of such a nature that ''we could not say the rights of the defendant were prejudiced by the fact that these witnesses had been in the courtroom. The trial judge did not think so

and has large discretion in determining such matters.''
We agree with this statement, and that it is applicable
to the particular facts of the instant case.

 Of course, the argument is that there was no
proof in the record until this witness was offered on
rebuttal, which would in any way injure the plaintiff in
error. We must disagree with counsel on this question
and think that there is sufficient proof to take the case
to the jury, as the trial judge thought, and that this
testimony was clearly a rebuttal of the testimony of the
plaintiff in error himself. It was not offered, of course,
until after plaintiff in error had closed his case. The
argument is made that when the Assistant District At-
torney General took these witnesses to his office he
deliberately informed them of testimony already pre-
sented. We have carefully searched this record and we
cannot find any proof whatsoever to support such an
assertion. Of course, we can't go on anything except
what the record shows.

 The next proposition is that the trial court com-
mitted error in not polling the jury when it reported into
court. When the jury returned finally at night after
the conclusion of the trial, arguments, etc., they were
asked by the trial judge if they had agreed and the fore-
man answered that they had, the judged asked what
the verdict was and the foreman answered. There was
no request by either side that the jury be polled. When
the foreman reported there in the presence of all the
rest of the jurors what the finding of the jury was, the
trial judge then called the defendant up, who was pres-
ent, sentenced him at the time, and then allowed so many
days within which to file a motion for a new trial. Clearly,
there is no error here.

▆▆▆ In 1955, the Legislature passed an act with reference to polling juries which is codified in the Cumulative Supplement of the Code as sec. 20-1324 and sec. 20-1325, T.C.A. The first section is the only one that is applicable here. This section applies to both criminal and civil trials and provides that in either the trial judge "shall be required to poll the jury on the application of either the state or the defendant in criminal cases * * *." The plain clear intent and meaning of this statutory requirement is that the trial judge is only required to poll the jury upon application of one of the parties. By the very obvious enactment of the statute it negatives the argument of plaintiff in error that reversible error was committed when the jury was not polled when no application therefor is made. An interesting discussion of the question here involved can be found in Wharton's Criminal Law and Procedure, Anderson, Vol. 5, beginning at sec. 2142, page 331, and 23A C.J.S. Criminal Law sec. 1392, page 1047 et seq. In the discussion there among other things it is shown that in the absence of a statute, normally the polling of the jury rests in the discretion of the court, and following our statutory rule, above referred to, many cases are cited on the proposition that the court is not required to have the jury polled in the absence of a request therefor. Of course, under this statute as in most jurisdictions the defendant in a criminal case is entitled as a matter of right to have the jury polled, but clearly the trial court will not be put in error in failing to poll the jury unless an application therefor has been made by the defendant. Prior to the enactment of this statute we, in *England v. State,* 196 Tenn. 186, 264 S.W.2d 815, held the right to have the jury polled may be waived when a timely de-

mand or request for a poll was not exercised by the defendant, and when such was not so exercised the failure to do so operated as a waiver.

After a careful consideration of all the questions presented herein for reasons above set forth, we must overrule the assignments of error presented, and affirm the judgment below.