**STATE of Tennessee, Appellee,**

v.

**Earnest Jerome WICKS and Brent Stewart, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 7, 1987.

Permission to Appeal Denied by Supreme Court April 13, 1987.

W.J. Michael Cody, Atty. Gen. & Reporter, James W. Thompson, Asst. Atty. Gen., Nashville, Kenneth Roach, Asst. Dist. Atty. Gen., Memphis, for appellee.

Charles Wright, Walker Gwinn, Asst. Public Defenders, Memphis, for Earnest J. Wicks.

James V. Ball, Memphis, for Brent Stewart.

## OPINION

O'BRIEN, Judge.

These defendants, together with Ulysses Stewart, were indicted by the Shelby County Grand Jury for robbery with a deadly weapon. Ulysses Stewart was acquitted. Wicks was found guilty of robbery, Brent Stewart was found guilty of robbery with a deadly weapon. Wick's sentence was fixed at ten (10) years in the penitentiary as a Range II persistent and especially aggravated offender. Stewart was sentenced to twelve (12) years as a Range I standard offender.

The defendants have raised mutual and similar issues charging the evidence was insufficient to sustain their conviction, and that the trial court improperly excluded testimony of Wicks's alibi witness on the ground that she violated the rule of exclusion. We affirm the judgment of the trial court.

On the issue of the evidence, on 31 August 1984 at about 2:00 a.m., two sis-

ters, Kari and Jill Tuthill, driving separate automobiles, stopped at a service station located at the intersection of Poplar and Tillman Streets in the City of Memphis. Kari Tuthill's automobile was overheating and they stopped to fill the radiator with water. While they were in the process the defendants arrived on the scene and offered assistance. One of them obtained an anti-freeze can from his car for Kari Tuthill to use to fill her radiator. Jill Tuthill remained sitting behind the wheel of her own car. One of the defendants reached in the passenger side of Jill Tuthill's car and began fumbling with her purse and some other articles she had laying on the seat. He then got into the car on the passenger side and refused to leave. She looked in her rear view mirror and saw the third man meet a female at the rear of the car. He came back with a gun. While he forced her out of her car the other man took her purse, containing her wallet. He also took a makeup bag and a gray vest. While this was going on her sister attempted to intervene and one of the men aimed a revolver at her, forcing her to stop. Two of the men, and possibly the three of them, ran away down Tillman Street. Jill Tuthill attempted to follow and one of them aimed a gun at her. Kari Tuthill jumped into Jill's automobile and chased the men into an apartment complex area. Two shots were fired at her. A week or two later Kari Tuthill identified Wicks in a photo display. Jill Tuthill identified Ulysses Stewart. Each of the victims made an in-court identification of the defendants. Eddie Cummings and Dorothy Mosby arrived on the scene as the robbery was taking place. Sometime later Mrs. Mosby called the Crime Stopper Program. She informed the police she was acquainted with Brent Stewart, had seen him many times, and that he was one of the robbers. She had also seen Ulysses Stewart in the neighborhood. Ed Cummings identified both Brent Stewart and Ulysses Stewart. Mosby identified Brent Stewart in court. Cummings made an in-court identification of Brent Stewart and Ulysses Stewart. John Davis, night manager of the service station testified that he had known all three of the defend-

ants for some period of time. He identified Brent and Ulysses Stewart in the line-up. He made an in-court identification of all three defendants. He told the officers on the night of the robbery that he knew the identity of the robbers. These various witnesses were able to describe physical characteristics of the defendants, give a description of their attire, and each was able to state which of the defendants was in possession of which weapon as well as their individual activities while the robbery was taking place. This evidence was abundantly sufficient for any rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979); T.R.A.P. 13(e).

Each of the defendants complain of the exclusion of the testimony of Celestè Ann Wright, a female acquaintance of Wicks, who was in and out of the courtroom during the time the State's witnesses were testifying. At the beginning of the trial the witnesses were placed under the rule, the record does not indicate at whose request this was done. When the witness was called to testify the State objected to her testimony and the objection was sustained. An offer of proof was made out of the presence of the jury in which the witness testified that Ernest Wicks was in her presence from the 29th of August until about 2:30 or 3:00 o'clock in the afternoon of August 31st.

We say beforehand, that Brent Stewart has shown no prejudice as a result of the exclusion of this witness' testimony and therefore the issue, as to him is without merit. The situation regarding Wicks is another matter. It is obvious from the dialogue in the record that both court and counsel are confused in regard to the true sense of the rule on exclusion of witnesses during trial.

The proper interpretation of the rule on sequestration of witnesses is set out in *Nance v. State*, 210 Tenn. 328, 358 S.W.2d 327 (1962):

"Since probably the beginning of time in the trial of cases witnesses have been sequestered by order of the court on

motion of counsel on either side. Our earliest reported case on the subject is Nelson v. State, 32 Tenn. 237. Obviously this rule, or expedient, is designed to detect falsehood as well as to prevent any witness from coloring his, or her, testimony either purposely or through influence by talking to other witnesses and hearing them talk. An interesting discussion and summary of the question under consideration may be found in Wharton's Criminal Evidence, 12th Ed., Anderson, Vol 3 § 840, page 260, et seq. At page 209 of this work, it is said:

'The violation of the order of sequestration does not in itself make the witness incompetent or compel his exclusion', citing authorities from many states."

In *Smith v. State*, 72 Tenn. 428, 430 (1880) defense counsel endeavored to put on a witness who had been present in the courtroom during the testimony of some of the witnesses. The trial judge sustained the objection of the State's attorney, refusing to allow the witness to testify because he had heard the testimony of the defendant's witnesses. The Supreme Court reversed and in doing so said:

"If, as the record fairly implies, his Honor was of opinion that the witness should be excluded merely because the State and the defendant had asked for the rule that the witnesses should be examined out of the hearing of each other, he was clearly in error. The rule is to be favored as a mode of eliciting the truth, and is demandable as of right in all cases, ... showing its necessity; *Rainwater v. Elmore*, 1 Heis., 363; *Nelson v. State*, 2 Swan, 237. But all the authorities agree that the right of excluding the witness for disobedience to the order is in the discretion of the Court, *a discretion rarely exercised*: 1 Greenl.Ev., sec. 432, and cases cited. And it has been ruled that if the witness remain in Court, in disobedience of the order of separation, his testimony, on that ground alone, cannot be excluded, but is matter for observation on his evidence: ..." (Italics supplied).

In *Smith*, supra, the court went on to say that the excluded testimony was vital to the defense and its exclusion was highly prejudicial to the defendant. In *Pile v. State*, 107 Tenn. 532, 64 S.W. 477 (1901), the court held that rejection of a material witness for the defendant in a felony case on the ground that he had entered the courtroom and heard part of the evidence, in violation of the rule, constituted reversible error when the witness violated the rule through ignorance and without fault of himself, or the defendant or his counsel. In Wharton's Criminal Evidence, 13th Ed. Torcia, § 405, p. 278 it is stated this way:

"If the disqualification of a witness from testifying—because of the violation of an order of sequestration—constitutes error, such error will be regarded as harmless if the proposed testimony was not material and would not have produced a different result. But if the proposed testimony was material, the erroneous disqualification of the witness will be regarded as reversible error. If the trial judge erred in permitting a disobedient witness to testify, it will not be regarded as reversible error unless the wronged party is able to show that he was prejudiced by the testimony."

In *Johnson v. State*, 477 S.W.2d 221, 223 (Tenn.Cr.App.1971) we had this to say:

"This record discloses that defendant's attorney asked for the rule and the rule was ordered by the trial court. This witness was in the courtroom during part of the trial, but not during the time when the defendant testified.

The defendant and his attorney, no doubt, knew that defendant's defense was going to be an alibi attempting to show that he was not present at the time of the alleged burglary and therefore could not have committed the crime. The defendant and his attorney certainly knew that the main witness would be Debra Westfield. The defendant's attorney invoked the rule for witnesses to be excluded from the courtroom. And while it is true that witness Debra Westfield may not have been in the courtroom at the time of defendant's testimony, according to the record she was present

when the State's witnesses testified and had the benefit of hearing their testimony."

The trial judge has broad discretion in the decision regarding the exclusion of witnesses in accordance with the rule, and unless this discretion is abused his action will not be reversed. See *Nance v. State,* supra. In this case the evidence was strong against all of the defendants. Various disinterested eyewitnesses who knew them, or were acquainted with them by sight, had seen each of the defendants about the neighborhood, prior to the robbery. They identified all the defendants, including Wicks, in open court, as the culprits, If there was error in exclusion of the testimony of the witness, it was no more than harmless. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. State,* 215 Tenn. 338, 385 S.W.2d 758 (1965).

The judgment of the trial court is affirmed.

DWYER and DUNCAN, JJ., concur.