**STATE of Tennessee, Appellee,**

v.

**Donald Eugene SMITH, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 3, 1988.

Permission to Appeal Denied by Supreme Court May 31, 1988.

James A.H. Bell, Knoxville, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Bettye Springfield–Carter, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Richard R. Vance, Asst. Dist. Atty. Gen., Sevierville, for appellee.

## OPINION

JONES, Judge.

The defendant, Donald Eugene Smith, was convicted of murder second degree by the use of a firearm. The trial court sentenced the defendant to confinement in the Department of Correction for a period of twenty (20) years as a Range I standard offender. The trial court sentenced the defendant to confinement for a period of fifteen (15) years for the offense of murder second degree; and he enhanced this sentence by ordering that the defendant serve an additional five (5) years, consecutive to the sentence for murder second degree, because the defendant employed a firearm in the commission of the offense.

In this Court the defendant presents three (3) issues for our review. He contends: (a) the evidence contained in the record is insufficient to support his conviction, (b) the trial court erred in permitting the State to introduce evidence of the defendant's prior bad acts in its case in chief, and (c) the trial court committed error in telling the jury that evidence of the defendant's prior acts of striking his wife could be considered by the jury as evidence of the defendant's propensity for violence.

## SUFFICIENCY OF THE EVIDENCE

The defendant and his wife, Mary Martha Smith, had a rather stormy marriage. There is evidence in the record that the defendant had physically assaulted his wife during their three years of marriage. The defendant admitted that he had "smacked" Mrs. Smith, and he asserted that Mrs. Smith, who was as large as him, had "smacked" him as well. It appears Mrs. Smith's family, including James Curtis Collins, her brother and the victim in this case, were aware of the physical abuse Mrs. Smith had suffered at the hands of the defendant.

The Smiths had separated on several occasions, resolved their differences on each of these occasions, reunited, and resumed their marital relationship. Their last separation had ended only two weeks prior to the date in question. At that time the parties resumed their marital relationship. They were living as husband and wife in the trailer of Mrs. Zola Steele, Mrs. Smith's mother, on the date in question.

When the defendant returned home at approximately 5:30 p.m. on the 20th day of April, 1986, it was apparent to Mrs. Smith that he had been drinking. Shortly after his arrival he asked the victim, who was visiting his mother, for a drink of his moonshine liquor. The victim agreed, and the defendant took one drink of the liquor. Mrs. Smith told the defendant he shouldn't be drinking since they "were living off of her mother." It appears the defendant had been unemployed. The defendant calmly told Mrs. Smith that if she wanted him to leave, he would leave voluntarily. The defendant then proceeded to the Smiths' bed-

room to pack his clothes. Mrs. Smith obtained a box and followed him into the bedroom. When Mrs. Smith closed the door, the door locked. While the defendant was obtaining his clothes, it appears that the Smiths began arguing. The argument could be heard throughout the trailer due to the thinness of the interior walls. When the defendant opened the drawers containing the children's clothes, Mrs. Smith stated: "No Don, that's the baby's clothes." He responded by slamming the drawer shut.

Danny Wayne Collins, Mrs. Smith's fifteen-year-old nephew, said he heard his aunt say "Don't Don, quit," and then a loud noise. He immediately proceeded to the Smiths' bedroom to see what had occurred. He thought the defendant may be hurting his aunt. When he found the door was locked, he kicked it open with his foot. As he entered the room, he saw the defendant with a gun in his hand. The gun was pointed in Danny Wayne's direction. The defendant made a rather harsh statement to the young man.

James Curtis Collins, the victim, had also heard the argument and the loud noise coming from the bedroom. He told his mother he was going to the bedroom to see what the defendant was doing to his sister. As the victim entered the bedroom, he pushed Danny Wayne to one side and dove at the defendant. According to Danny Wayne, the victim had "brought his fist back and was going to hit Donald [the defendant]." The defendant began firing the pistol at the victim. The victim eventually fell into the hallway outside the bedroom. As the defendant was leaving the trailer, he stood beside the victim's motionless body and fired three shots at him. The victim's elderly mother grabbed the defendant while he was in the hall. The defendant turned, pointed the pistol at Mrs. Steele, and pulled the trigger, but it didn't fire.

The autopsy revealed that eight bullets had been fired at or into the victim's body. Three of the entry wounds had smoke fouling which indicated the gun had been fired within an inch on these occasions. The cause of death was attributed to a gunshot wound to the victim's head. The autopsy also revealed that the victim's blood contained 0.33 percent of ethyl alcohol, which indicated the victim was heavily intoxicated.

The defendant claimed that he shot the victim in self-defense.

The record reveals the victim was much heavier and stronger than the defendant; and the victim religiously carried a large pocket knife, approximately six inches in length, which was kept razor sharp. In addition, it was shown that the defendant, as a general rule, never left home without a shotgun. While there is a question as to whether the victim was in possession of his knife when shot, it appears that he did have the knife in his pocket, and a family member removed it from his pocket after the defendant left the trailer. The shotgun was on the seat of a motor vehicle parked outside the trailer.

The victim was described as "wild" when he was intoxicated; and it didn't take much to invoke the victim's wrath when he was drinking.

The victim had physically beaten the defendant on at least two prior occasions. On one occasion the victim struck him with a tire jack several times, and the defendant was required to obtain medical assistance for his injuries. On another occasion the victim struck the defendant with a stick similar to the handle of a sledge hammer. The defendant was also aware the victim had previously stabbed a man; and the victim had broken into the home of another man, fractured or broke his ribs, and took what he wanted from the man's home. Approximately two weeks before the date in question the victim had placed the blade of a knife to the throat of Mrs. Smith's child by a previous marriage; and he admonished the child that if she moved, he would decapitate her.

The defendant described the lighting conditions in the bedroom as poor. It was cloudy that day, it had been or was raining, and the incident occurred about dusk. Consequently, he couldn't tell whether the victim was armed. We parenthetically note

Mrs. Smith testified she could clearly see that the victim was not armed when he entered the bedroom. The defendant contended the victim continued to come at him, and he continued to fire the pistol at him. He admitted he shot the victim at close range.

The defendant reasoned that there was no escape route available to him. Both Danny Wayne, who subsequently ran away after the gun was fired the first time, and the victim were between the defendant and the only door leading from the bedroom. The window in the bedroom was extremely high and the defendant could not escape through the window. In addition, the dimensions of the bedroom reveal it was a very small room, and the victim's presence, the aggressive tendencies he displayed toward the defendant, and the firing of the weapon occurred in a matter of seconds.

The defendant left the trailer on foot. He walked several miles in the rain before he was able to obtain transportation to Union County. Along the way he hid the murder weapon. During the early morning hours of April 21, 1986, the defendant surrendered himself to Union County authorities. He subsequently assisted authorities in recovering the murder weapon. The gun was a six-shot .22 caliber revolver.

The record reveals the defendant fled the scene of the homicide because he was afraid of the victim's family. His fear and flight was probably justified because three of the victim's brothers appeared at the Union County Jail shortly after his surrender. They wanted to know if a deputy sheriff had shot him. When the brothers were advised there had been no reason to shoot the defendant, they demanded to see him. They were then asked to leave because of their apparent hostile behavior.

In rebuttal the State established that two days prior to the date in question the defendant stated that if the victim "every [sic] gets in ... [my] face he [the defendant] had something in the car that would take of him."

The defendant argues that the evidence contained in the record fails to establish the offense of murder second degree. In addition, the defendant asserts that the evidence clearly establishes that he acted in self-defense.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e).

In determining the sufficiency of the evidence we do not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978); *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973); *Braziel v. State*, 529 S.W.2d 501, 505 (Tenn.Crim.App.1975). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, supra.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage*, supra; *State v. Grace*, supra; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). In *Grace*, our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *State v. Grace*, supra, the defendant has the burden of proving to this Court that the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, supra. This Court will not disturb a verdict of guilt on the facts unless the evidence contained in the record is insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, supra.

■ We are of the opinion there is sufficient evidence contained in the record from which a rational trier of fact could conclude that the defendant was guilty of murder second degree. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Tuggle*, supra. Malice, which is an essential element of the offense of second degree murder, may be inferred from the use of a firearm, here a pistol, to kill the victim, *State v. Caldwell*, 671 S.W.2d 459, 463 (Tenn.1984), cert. den. 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160 (1984); and this inference is sufficient to support a conviction for second degree murder. *State v. Byerley*, 658 S.W.2d 134, 138 (Tenn.Crim. App.1983). Also, malice may be inferred from the circumstances surrounding the killing. See *Wilson v. State*, 574 S.W.2d 52, 55 (Tenn.Crim.App.1978); *State v. Gilbert*, 612 S.W.2d 188, 190 (Tenn.Crim.App. 1980). The shooting of the victim eight (8) times "abundantly justified a finding of malice." *State v. Gilbert*, supra at 190. The elements of unlawfulness and willfulness of the homicide were established by the defendant's standing over the victim's motionless body and shooting the victim three (3) times before fleeing the scene. See *Nance v. State*, 210 Tenn. 328, 358 S.W.2d 327 (1962); *State v. Caldwell*, supra; *Wilson v. State*, supra.

■ Whether the defendant had a right to defend himself against the physical attack of the victim by the utilization of a firearm became a moot question when the defendant stood beside the motionless body of the victim and shot him three (3) times before fleeing the scene. See *Nance v. State*, supra; *State v. Gilbert*, supra. In *Nance* our Supreme Court said:

...[T]his record clearly shows that after the deceased was shot twice, even though the plaintiff in error had a right to defend himself under the circumstances as he saw them at the time, when the plaintiff in error followed the deceased to the rear of the building and then shot him in the head, and this third shot was the shot that caused the death, then clearly under such facts, murder in the

second degree could be established.... 210 Tenn. at 332, 358 S.W.2d at 329.

This issue is without merit.

## EVIDENCE OF DEFENDANT'S PHYSICAL ABUSE OF HIS WIFE

The trial court permitted the State to introduce evidence that the defendant physically assaulted his wife, and the victim was aware of this abuse. This evidence was introduced to explain why the victim went to the Smiths' bedroom after hearing his sister's statements and the loud noise caused by the drawer or closet door being slammed shut.

■ The defendant contends the trial court committed egregious error in admitting this evidence. First, the defendant argues that the introduction of this evidence violated the rule which prohibits the State from introducing evidence of an accused's character or reputation until the accused places his character in issue. See *Gray v. State*, 191 Tenn. 526, 235 S.W.2d 20 (1950). Second, the defendant argues that the introduction of this evidence violated the rule which prohibits proof of other crimes or bad acts for the purpose of showing the defendant's propensity for violence or to prove the defendant guilty of the offense on trial. See *State v. Burchfield*, 664 S.W.2d 284 (Tenn.1984); *State v. Parton*, 694 S.W.2d 299 (Tenn.1985); *State v. Rounsaville*, 701 S.W.2d 817 (Tenn.1985); *Young v. State*, 566 S.W.2d 895 (Tenn. Crim.App.1978); *State v. Bowling*, 649 S.W.2d 281 (Tenn.Crim.App.1983).

We parenthetically note that the State has failed to brief this issue.

While we agree with and reaffirm both of the principles of law asserted by the defendant, their application in the case *sub judice* do not per se operate to exclude the evidence in question. If it can be shown that evidence of this nature "is relevant to some matter actually in issue in the case on trial and ... it's probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted." *Bunch v. State*, 605 S.W.

**856**

2d 227, 229 (Tenn.1980). See *Patterson v. State*, 184 Tenn. 39, 195 S.W.2d 26 (1946).

We are of the opinion the fact that the defendant had physically assaulted his wife and the victim was aware of this abuse was relevant to explain why the victim responded to his sister's apparent loud remonstration and the loud noise created by the defendant's slamming the drawer or closet door shut. See *Kirby v. State*, 15 Tenn. 258, 262 (1834). Furthermore, the probative value of the evidence far outweighed its prejudicial effect. The presentation of this evidence was extremely brief, and no details of the assaults were mentioned. It entailed two short questions and two very brief answers.

If the introduction of this evidence can be said to have constituted error, we are of the opinion it was harmless. Tenn. R.App.P. 36(b); Tenn.R.Crim.P. 52(a). The evidence of the defendant's guilt of second degree murder is overwhelming.

This issue is without merit.

## STATEMENT OF TRIAL COURT CONCERNING DEFENDANT'S PROPENSITY TOWARDS VIOLENCE

When the State introduced evidence concerning the defendant's past history of physically assaulting his wife, the trial court gave extensive limiting instructions regarding the purpose for admitting the evidence and how the jury was to receive and consider the evidence. During the course of these instructions the trial court stated the evidence "shows his [the defendant] propensity towards violence." He then asked the district attorney general if this was the purpose for introducing the evidence. The district attorney general again explained to the court the reason for introducing the evidence. When defense counsel objected to this statement, the trial court instructed the jury that the evidence could not be considered to show the propensity of the defendant for violence. Shortly thereafter the trial court again corrected himself and told the jury "it would be improper to show his propensity for violence. ... [C]ancel that!" He further told the jury "it shouldn't have been said. Mistaken to be said." At another point he told the jury "I instruct you to strictly to disregard that.... I think I've straightened that out, General, I was mistaken on that, yes sir?"

While we are of the opinion the trial court's statement that the defendant's past history of physically assaulting his wife could be considered to show the defendant's propensity for violence, this error was alleviated by the trial court's curative instructions. *State v. Hardin*, 691 S.W.2d 578 (Tenn.Crim.App.1985); *State v. Blackmon*, 701 S.W.2d 228, 233 (Tenn.Crim.App. 1985). Furthermore, this error was harmless particularly in view of the extensive curative instructions given by the trial judge and the overwhelming evidence of the defendant's guilt. Tenn.R.App.P. 36(b); Tenn.R.Crim.P. 52(a).

The judgment of the trial court is affirmed.

DUNCAN, P.J., and WADE, J., concur.