**STATE of Tennessee, Appellee,**

v.

**Rima Cheryl GURLEY, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Sept. 20, 1995.

Raymond W. Fraley, Jr., Fayetteville, for Appellant.

Charles W. Burson, Attorney General & Reporter, Merrilyn Feirman, Assistant Attorney General, Nashville, Robert "Gus" Radford, District Attorney General, Eleanor Cahill, Asst. Dist. Attorney General, Huntingdon, for Appellee.

## OPINION

SUMMERS, Judge.

The appellant, Rima Cheryl Gurley, was convicted of criminally negligent homicide and received the minimum sentence of one (1) year of incarceration. She now appeals, presenting the following issues for our review: (1) whether she received effective assistance of counsel; (2) whether the evidence adduced at trial was sufficient to support the jury's verdict; and (3) whether the trial court properly denied the appellant probation. We find these issues to be without merit and affirm the judgment of the trial court.

## FACTS

It would be impossible for us to consider the issues raised in the instant case without briefly summarizing the factual background. The victim, Richard Autry, began seeing the appellant in 1989. When the appellant became pregnant shortly thereafter, she and Autry moved in together. They had a turbulent relationship. They were often separated because the appellant would either ask Autry to leave or Autry himself would leave in anger. The appellant testified that Autry frequently abused her physically when the two were together. However, she indicated that she loved him and that she always reconciled with him in hopes that he would discontinue his abusive behavior.

The two had been living apart for some time when the appellant returned to her trailer to find Autry there. The appellant testified that she asked Autry to leave, but he refused, saying that he wanted to talk about their daughter. They took the child and went to get something to eat. Autry was drinking whiskey, and the appellant stated that she only left with him to prevent an argument. They were out for several hours, returning to the trailer after 1:30 A.M.

When they returned, Autry again refused to leave. According to the appellant, Autry heard a message on the answering machine and became enraged. He ripped the answering machine loose and broke the cassette tape inside. Autry hit the appellant across her face and began punching her on the top of the head. The appellant went into the bathroom because she had been crying, and Autry followed her. He pushed her into the bathtub and then pulled her up by the hair and repeatedly slammed her into the wall. He then dragged her down the hallway and into the living room. When the appellant attempted to call 911, Autry slammed the receiver down and broke the telephone. After again beating and kicking the appellant, Autry took out a shotgun and, with his back turned to the appellant, appeared to load it. Autry told the appellant that he was going to kill her and that she was not leaving the trailer the same way she entered.

After threatening the appellant, Autry walked to the front door of the trailer and leaned the shotgun against the wall. The appellant walked into the kitchen and got a drink of water. When she returned to the living room she grabbed the weapon from where Autry had left it. Autry also grabbed the shotgun and the two struggled as the appellant backed down the hallway into the bedroom. Autry let go of the weapon and the appellant cocked the hammer and put her finger on the trigger. She asked Autry to leave, and he refused, threatening to harm the appellant's mother. The two walked to the living room, but Autry again grabbed the shotgun and backed the appellant all the way down the hall and into the bedroom. When she had backed all the way to the wall, Autry tried to jerk the weapon away from her and it fired, hitting Autry in the stomach.

The appellant grabbed her daughter and ran to a neighbor's house still holding the shotgun. She urged her neighbors to call 911, returned to her trailer, and began administering CPR to Autry. She was still performing CPR when the paramedics arrived, but Autry was already dead.

Investigators found both the answering machine and the broken pieces of the answering machine cassette in the bedroom near Autry's body. The appellant could not explain why the answering machine and cassette were not in the living room where Autry had allegedly left them. A doctor who examined the appellant a few hours after the killing testified that the appellant had a reddened area on her upper back which resembled a hand print. The appellant also had a bruise and some minor abrasions on her nose and complained that the top of her head was sore. Further examination did not reveal any injury to the appellant's head. The doctor's notes from the examination were read into the record and state in part, "Patient alleges that her boyfriend physically abused her about 3:00 A.M., but she had very few indications of it."

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ The appellant maintains that her counsel at trial was ineffective by failing to give an opening statement referring to "battered woman's syndrome" and by not presenting evidence that she was suffering from battered woman's syndrome at the time of the killing. She contends that evidence of battered woman's syndrome would have bolstered her self-defense theory and, but for the cumulative effect of counsel's errors, would have resulted in a different outcome at trial.

The appropriate test for determining whether counsel provided effective assistance at trial is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975). Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), there

is a two-prong test which places the burden on the appellant to show that (1) the representation was deficient, requiring a showing that counsel made errors so serious that she or he was not functioning as "counsel" as guaranteed a defendant by the Sixth Amendment, and (2) the deficient representation prejudiced the defense to the point of depriving the appellant of a fair trial with a reliable result. To succeed on this claim, the appellant must show that there is a "reasonable probability," which is a probability sufficient to undermine confidence in the outcome that, but for the counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068.

■ At trial, counsel presentéd evidence, including eyewitness testimony, of numerous incidents in which Autry had physically abused the appellant. Rather than present expert testimony concerning battered woman's syndrome (also known as battered spouse syndrome, battered wife syndrome, etc.) counsel chose to pursue a pure self-defense theory. As we have previously held, this Court does not use the benefit of hindsight to second-guess trial strategy by counsel and criticize counsel's tactics. *State v. Martin,* 627 S.W.2d 139, 142 (Tenn.Crim. App.1981).

We conclude that counsel's informed decision to present a defense based completely on self-defense rather than on a combination of self-defense and battered woman's syndrome was a strategic decision within the range of competence demanded of attorneys in criminal cases. We parenthetically note that counsel was fully aware of battered woman's syndrome and its applicability to the appellant's case. At the appellant's sentencing hearing, counsel proposed battered woman's syndrome as a condition which could significantly reduce the appellant's culpability for the offense. We cannot fault counsel for declining to present the arguably inconsistent theories of battered woman's syndrome and self-defense at trial.

Although a finding on our part that counsel committed no error in presenting the appellant's defense ends the inquiry, we will nevertheless address the issue of prejudice. The appellant was indicted on a charge of second degree murder, but was only convicted of criminally negligent homicide. This speaks to the effectiveness of counsel rather than ineffectiveness. Furthermore, it is well settled Tennessee law that in order to excuse a homicide on the ground of self-defense, the defendant must show that at the time of the killing he or she was acting upon a well-founded fear of death or great bodily harm to himself or herself, and that the actions taken were necessary in self-defense. *E.g., State v. Wilson,* 556 S.W.2d 232, 234 (Tenn.1977); *State v. McCray,* 512 S.W.2d 263 (Tenn. 1974); *Nance v. State,* 210 Tenn. 328, 358 S.W.2d 327 (1962). It is unlikely that evidence that the appellant was suffering from battered woman's syndrome would have affected the jury's determination that the appellant failed to establish her claim of self-defense.

## SUFFICIENCY OF THE EVIDENCE

■ The appellant contends that the evidence adduced at trial is legally insufficient to support her conviction. Essentially, the appellant argues that, based on her own testimony, the jury should have concluded that she killed Autry in self-defense. In her brief, the appellant asserts that she was "defending her life the only way she could" and that she "had no choice but to act in self defense." The appellant's contention that she intentionally killed Autry in self-defense belies her own trial testimony in which she alleged that the weapon fired accidentally when Autry attempted to wrest it from her grip. The jury apparently discredited her inconsistent and self-serving testimony, as do we. This issue is without merit.

## DENIAL OF PROBATION

■ Finally, the appellant asserts that the trial court improperly denied her full probation. Among the factors applicable to a defendant's application for probation are the circumstances of the offense, the defendant's criminal record, social history, present conditions, the deterrent effect upon other criminal activities, and the best interest of the defendant and the public. *State v. Grear,* 568 S.W.2d 285 (Tenn.1978). Denial of probation may be based on one applicable factor

alone. *Powers v. State,* 577 S.W.2d 684, 685–86 (Tenn.Crim.App.1978). The trial court explicitly considered the circumstances of the offense, stating on the record that he felt that there was absolutely no justification or reason for the killing. Furthermore, he indicated that he found the appellant's testimony incredulous and noted that she has yet to accept any responsibility for her actions. Our review of the record leads us to conclude that the trial court did not err in denying the appellant's application for alternative sentencing.

## CONCLUSION

Having thoroughly considered the issues presented for our review, we find them to be without merit. The judgment of the trial court is therefore:

**AFFIRMED.**

BARKER, J., and MARY BETH LEIBOWITZ, Special Judge, concur.