IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 3, 2005 Session

## STATE OF TENNESSEE v. PHILIP NAVEL

**Direct Appeal from the Circuit Court for Gibson County**
**No. 7291     Clayburn Peeples, Judge**

---

**No. W2004-01673-CCA-R3-CD  - Filed July 21, 2005**

---

This is a direct appeal of the sentence imposed for an aggravated sexual battery conviction entered pursuant to a guilty plea.  The Defendant was sentenced as a Range I, standard offender to twelve years to be served in the Tennessee Department of Correction (TDOC).  He now challenges his sentence, raising three issues: 1) the trial court erred in admitting the testimony of a witness at the conclusion of the sentencing hearing who had not been sequestered during prior testimony, 2) the trial court erred in applying one enhancement factor because it was also an element of the offense, and 3) the sentence was improperly enhanced in violation of Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004).  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

C. Timothy Crocker, Milan, Tennessee, for the appellant, Philip Navel.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; and Gary Brown, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The Defendant, Philip Navel, a middle school teacher in Medina, Tennessee, admitted to inappropriate sexual contact with several of his female fifth grade students over the course of approximately three years beginning in 2000.   In January of 2003, the Defendant was indicted on six counts of aggravated sexual battery.  See Tenn. Code Ann. § 39-13-504.  Pursuant to a plea agreement, the Defendant pled guilty to the first count and the remaining five counts were dismissed.

A consolidated plea acceptance and sentencing hearing was conducted in June of 2004. At the beginning of the hearing, the Defendant's counsel asked the State if it intended to call any witnesses, to which the State's counsel responded in the negative. The State then summarized the facts surrounding the offense of aggravated criminal battery for which the Defendant was convicted as follows:

> Your Honor, as I said, the first count in the Indictment involves a victim by the name of J.R.[1] [J.R] would testify that when she was in the fifth grade at Medina Middle School that her teacher was, in fact, Mr. Navel and that one day during class she was called to the front of the class to help grade papers and that she was, in fact, sitting in Mr. Navel's lap; that he put his arms around her and placed his hand on her inner thigh in a very inappropriate manner. She felt it to be inappropriate and, as a matter of fact, about a month later she confronted him about the fact that that made her feel uncomfortable and she felt it was sexually inappropriate.

The Defendant agreed that these facts were "essentially correct."

The trial court determined that the Defendant entered his guilty plea knowingly and voluntarily, accepted his plea, and entered a judgment of conviction for one count of aggravated sexual battery, a Class B felony. The sentencing phase of the hearing immediately followed the Defendant's guilty plea.

At the sentencing portion of the hearing, the State again declared it did not intend to call any witnesses, but would instead rely upon the evidence contained in the presentence report and an accompanying psychological report. The defense then called six character witnesses, all of whom testified to the Defendant's sincere remorse for the harm he caused to his juvenile victims.

The Defendant's pastor, Rev. Steve Cavitt, testified that he had known the Defendant for three years and believed his remorse was "genuine." He stated that the Defendant was active in the church, including participation in prayer ministry, discipleship groups, Bible studies and choir, and also served as a substitute Sunday school teacher. Mr. Craig Ramsey, the music minister at the Defendant's church, testified that he had known the Defendant for six years and found him to "faithfully and regularly"attend church activities. He further stated that the Defendant told him he had "crossed the line" with several of his female students, but prayed constantly for his victims. Mr. Ramsey characterized the Defendant's remorse as "sincere" and "absolutely genuine." Ms. Joanne Jones testified that the Defendant volunteered to help the needy in an outreach program she supervised for the church. Mr. Bill Smith testified that the Defendant had requested prayer from members of his small prayer group for an unspecified need for some time before he had been charged with criminal activity.

---

[1] It is the practice of this Court to identify juvenile victims of sex crimes by their initials.

Dr. Lewis Kizer testified that the Defendant substituted for him when he could not teach his adult Sunday school class. He also stated that after the Defendant resigned from his teaching position at Medina Middle School, he employed the Defendant in his medical office. Dr. Kizer stated that he gives the Defendant a flexible work schedule so he can attend counseling. He said that his female employees, while apprehensive at first, no longer feel uncomfortable working with the Defendant.

Mrs. Robin Navel, the Defendant's wife of over six years, described the Defendant as "a wonderful husband." She testified that he admitted to her that he "touched" several of his young students, and believed God allowed him to get caught before further damage could be done. She stated that the Defendant did not inform her of his struggle with his sexual addiction at school until after he was suspended, but has since been faithful in attending counseling.

The Defendant testified that he had a history of sexual addiction to adult females dating back to 1996 when he was treated for the illness in an inpatient facility. Following his release, he initially received regular counseling with professionals and with support groups such as Sex Addicts Anonymous (SAA), but stopped attending sessions after several years because he believed he was "stable." He stated that he was "as surprised as anyone" that his sex addiction pushed him to "fondle a child" and caused him to "become unsafe" in a classroom. The Defendant testified that he first noticed he had a problem with non-adult females in 2000. The Defendant conceded in cross-examination that he made a conscious decision to continue to stay in the classroom and victimize young girls for three years because he was too ashamed to seek help. He also admitted to touching the victim named in count one of the indictment as well as a "few others."

The Defendant further testified that he came to a point where he prayed to God to do "whatever it takes" to get him to stop his inappropriate behavior, and two weeks later he was suspended from his teaching position. He stated that he resigned on his own, and has sought appropriate counseling on his own. He also stated that he chose to be truthful, and chose not to pursue a jury trial to spare his victims from any further embarrassment and trauma.

After the defense presented its evidence but before the trial court sentenced the Defendant, the State sought to introduce the testimony of a parent of one of the victims. The defense objected, noting that the State had assured the defense it would not call any witnesses, and relying on this statement the defense never formally requested the sequestration rule. See Tenn. R. Evid. 615. The trial court overruled the defense's objection and allowed the witness to testify about the difficulties his daughter and his family faced after being victimized by the Defendant. The witness also stated that he had been too preoccupied to complete a written victim's impact statement.[2]

At the conclusion of the sentencing hearing, the trial court found several enhancement factors applicable, and concluded the seriousness of the offense mandated that the Defendant serve the

---

[2]The other five victims named in the indictment filed written victim impact statements, which were attached to the presentence report and considered by the trial court during sentencing.

maximum amount of time allowed in his sentencing range. Accordingly, the trial court sentenced the Defendant to twelve years to be served in the TDOC. The Defendant timely filed a notice of appeal.

## ANALYSIS

On appeal, the Defendant first claims that his twelve-year sentence should be reversed because he was prejudiced when the trial court allowed a State witness to testify after hearing "emotional and prejudicial testimony and facts," thereby violating the rule of sequestration. In the alternative, the Defendant claims his twelve-year sentence is excessive and should be reduced because one enhancement factor applied was also an element of the crime of which he was convicted, and all the enhancement factors were erroneously applied because they violated his Constitutional rights outlined in Blakely v. Washington, 124 S. Ct. 2531 (2004).

### I. Violation of the Rule of Sequestration

The Defendant asserts that Tennessee Rule of Evidence 615, commonly termed "the rule of sequestration" or simply "the rule," requires that, on request of a party, witnesses should be excluded from hearing the testimony of other witnesses. He argues that because the State asserted that it would not call any witnesses, his counsel did not request the rule. However, when the State did call a witness at the end of the hearing, he argues that the trial court abused its discretion in allowing the witness to testify. This testimony, the Defendant claims, was prejudicial because the witness was present in the courtroom throughout the entire proceedings and heard "emotional and prejudicial testimony and facts." On appeal, the State simply argues that because the Defendant's counsel did not formally request the rule, there can be no violation and therefore the issue is waived. While we disagree with the Defendant that he was prejudiced by the testimony, we decline to hold, under these circumstances, that the issue is waived.

Tennessee Rule of Evidence 615 provides: "At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing." Our supreme court has ruled that "[t]he purpose of this rule is to prevent one witness from hearing the testimony of another and adjusting his testimony accordingly." State v. Harris, 839 S.W.2d 54, 68 (Tenn. 1992). Additionally, "'The rule' may be invoked at anytime and is mandatory." State v. Anthony, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992). Despite the fact that the rule is mandatory, there is no established sanction for its violation. Rather, trial judges are "afforded wide discretion" in their determination of how to best handle a violation of the rule. State v. Coulter, 67 S.W.3d 3, 52 (Tenn. Crim. App. 2001).

A review of our case law reveals that in the "most egregious cases," preventing the witness from testifying or declaring a mistrial may be appropriate. See id. However, the Advisory Commission states that "[i]f a witness inadvertently and unintentionally hears some trial testimony, the sense of the rule would permit the judge to allow the witness to testify if fair under the circumstances." Tenn. R. Evid. 615, Advisory Commission Comments. This Court has previously concluded that when determining the appropriate sanction, courts should generally look to the following three factors: (1) the harm caused by the sequestration violation; (2) the importance of the

testimony of the witness who ignored the sequestration decree; and (3) who was at fault in the violation. Coulter, 67 S.W.3d at 52 (citing Neil P. Cohen et al., Tennessee Law of Evidence § 615.4 (3d ed. 1995)).

We begin our analysis of this issue by first noting that our standard of review is one of abuse of discretion. See State v. Wicks, 729 S.W.2d 283, 286 (Tenn. Crim. App. 1987). In reviewing a trial court's exercise of discretion, this Court will look to "'the seriousness of the violation and the prejudice, if any, that enured to the [aggrieved party].'" Coulter, 67 S.W.3d at 52 (quoting State v. James Edward French, No. 03C01-9503-CR-00096, 1996 WL 138289, at *6 (Tenn. Crim. App. at Knoxville, March 28, 1996)). The burden falls on the complaining party to demonstrate "abuse and prejudice." State v. Black, 75 S.W.3d 422, 424 (Tenn. Crim. App. 2001).

Although the Defendant never formally requested "the rule," a review of pertinent portions of the transcript reveals the circumstances surrounding this decision. At the beginning of the hearing, the following conversation between the Defendant's counsel, Mr. Crocker, and the State's counsel, General Brown, took place:

> MR. CROCKER: Garry, do you intend to call anybody?
> GENERAL BROWN: Excuse me?
> MR. CROCKER: Do you intend to call witnesses?
> GENERAL BROWN: No.

Whereupon the plea acceptance portion of the hearing was conducted.

Immediately after the Defendant's guilty plea was accepted, the following conversation took place:
> THE COURT: . . . [G]entlemen, are we ready to proceed with the sentencing hearing?
> GENERAL BROWN: Yes, sir.
> MR. CROCKER: Yes, sir.
> THE COURT: Go ahead, General.
> GENERAL BROWN: Yes, sir. The State does not desire to call any witnesses. We would move to introduce the Pre-Sentence Report which would include the five victim impact statements along with the summary from Cottonwood De Tucson, Incorporated regarding his prior counseling and treatment there back in 1996. . . .

Whereupon the defense proceeded to put forth its evidence.

Following the defense's presentation of evidence, the following conversation took place:

> MR. CROCKER: That concludes our proof except for argument.

GENERAL BROWN: Your Honor, there's one parent, and I realize this is out of order, but there's one parent that did not submit a victim impact statement. They would like — the father would like to testify just very briefly as to the impact this has had on his family.

THE COURT: All right. Mr. Crocker, I'm going to allow that.

MR. CROCKER: Well, for the record I would object to that because as I understood it the State has already made the statement that they were not going to call any witnesses and were going to allow the written impact statements — victim impact statements.

THE COURT: I'm still going to hear from this person.

GENERAL BROWN: I may very well have said that. I — but I should have said we weren't going to call the children.

MR. CROCKER: If Your Honor please, I would renew my objection. Had I known that there were going to be witnesses testifying for the State I would've called for the rule because there was the acknowledgment that there was not going to be any wit — there were not going to be any witnesses other than those statements.

GENERAL BROWN: He's not going to rebut anything —

THE COURT: I'm still going to allow the witness to testify.

Whereupon the State resumed putting on proof through the testimony of its witness.

In view of the factual circumstances of this case, we are unwilling to find that the Defendant waived the issue when he did not formally request the rule. It is clear from the record on appeal that the rule was not requested because of the multiple assurances by the State that it had no witnesses to sequester. Therefore, we reject the State's waiver argument and will examine this issue as if the rule had been requested.

In the instant case, it is clear that the party at fault in the violation was the State; however, the Defendant has failed to demonstrate any harm caused by the sequestration violation. The witness' testimony was largely cumulative to the written victim impact statements already admitted into evidence. More significantly, the Defendant has failed to show how he was unduly prejudiced by the witness' testimony. There is no suggestion that the witness altered his testimony based on what he heard prior to taking the stand. Accordingly, we conclude the trial court did not abuse its discretion in allowing the State's witness to testify. This issue is without merit.

## II. Enhancement Factor (5) as an Element of the Crime

In his second issue, the Defendant asserts that the trial court improperly enhanced his sentence based on the enhancement factor that the "victim of the offense was particularly vulnerable because of age . . . ." Tenn. Code Ann. § 40-35-114(5). The Defendant argues that because an element of the crime for which he was convicted was that "[t]he victim is less than thirteen (13) years of age," the legislature had already contemplated the age factor into the equation by labeling the crime "aggravated" and mandating a harsher sentence than if the victim was not under age thirteen. Tenn. Code Ann. § 39-13-504(a)(4). Therefore, the Defendant argues, vulnerability due

to the victim's young age cannot be used again at sentencing as an enhancement factor. The State argues that the trial court did not actually apply enhancement factor (5) in the Defendant's case, but if it did, it is allowable because the enhancement factor goes to the element of vulnerability, not just age. We agree with the State.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

In calculating a sentence for a Class B felony conviction, the "presumptive sentence . . . shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). If there are enhancement, but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. See Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors for a Class B felony requires the court to start at the minimum, next assign the proper weight for any applicable enhancement factor(s), and finally apply a reduction within the range as appropriate for any mitigating factor(s). See Tenn. Code Ann. § 40-35-210(e). The sentence for a Class B felony as a Range I, standard offender is "not less than eight (8) nor more than twelve (12) years." Tenn. Code Ann. § 40-35-

112(a)(2). Therefore, the Defendant's presumptive sentence for his Class B felony conviction for aggravated sexual battery is the minimum in the range, or eight years. However, the weight to be afforded any enhancement or mitigating factor(s) is left to the trial court's discretion. See Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In this case, the trial court first noted that a sentence of confinement was necessary to deter future crimes of this nature, to avoid depreciating the seriousness of the offense, and because prior measures less restrictive than incarceration had been unsuccessful. The trial court then stated that two mitigation factors would apply: the Defendant's conduct did not cause serious bodily injury, and the Defendant chose to waive a jury trial to save his victims from further embarrassment. See Tenn. Code Ann. § 40-35-113(1) and (13). The court then examined four enhancement factors, and found three applied: the offense involved more than one victim, the Defendant abused a position of trust, and the Defendant committed the offense while on school property. See Tenn. Code Ann. § 40-35-114(4), (16) and (18).[3]

> As to enhancement factor (5), the trial court noted:
> General Brown mentioned aggravating factor number 5 and then discounted it. I'm not so sure that it should be discounted even though included in the definition of aggravated sexual battery for this particular situation is, I believe, that the victim must be less than 13 years of age. There's quite a difference in a 12-year-old victim and a 10-year-old victim.

However, the court did not state for the record that this factor "applied" as it did with the other three enhancement factors and two mitigating factors. Therefore we conclude that the Defendant's sentence was properly enhanced to twelve years based on other enhancement factors that the trial court applied, and it appears that enhancement factor (5) was not applied in the Defendant's case.

In addition, we conclude that the Defendant's argument is without merit. Our sentencing law provides that the enumerated factors are applicable only "if not themselves essential elements of the offense as charged in the indictment." Tenn. Code Ann. § 40-35-114. However, our supreme court has consistently held that while age is an essential element of an aggravated sexual battery conviction this does not "preclude application of the 'particularly vulnerable' enhancement factor," noting factor (5) "applies only because the victim is 'particularly vulnerable,' not because the victim is a certain age." State v. Walton, 958 S.W.2d 724, 729 (Tenn. 1997); see also State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993) (holding that "the relevant inquiry is not simply whether the victim is under the age of thirteen, but instead whether the victim was particularly vulnerable because of age or physical or mental disability"). Accordingly, this issue is without merit.

## III. Blakely Violation

---

[3]On appeal, the Defendant does not challenge the applicability of these three factors.

In his final issue on appeal, the Defendant argues that his Sixth Amendment right to a trial by jury was impugned when the trial court made determinations of fact for sentence enhancement purposes that were not submitted to a jury or admitted by him, citing Blakely v. Washington, 124. S. Ct. 2531 (2004). However, our supreme court has recently held that the enhancement component of Tennessee's sentencing structure does not violate a defendant's Sixth Amendment right to a trial by jury. See State v. Gomez, ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848 (Tenn., Nashville, April 15, 2005). Therefore, the Defendant's claim of a Sixth Amendment right violation based on the trial court's enhancement of his sentence is without merit.[4]

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

---

[4]We again note that, other than the challenge to enhancement factor (5) addressed above, the Defendant does not otherwise challenge the applicability of the enhancement factors to his sentence.