# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JUNE SESSION, 1997



FILED

November 20, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9608-CC-00342 |
| Appellee, | ) | |
| | ) | BEDFORD COUNTY |
| V. | ) | |
| | ) | HON. CHARLES LEE, JUDGE |
| TIMOTHY MARK REDD, | ) | |
| Appellant. | ) | (ATTEMPTED BURGLARY) |

FOR THE APPELLANT:

**A. JACKSON DEARING, III**
117 South Main Street
Suite 101
Shelbyville, TN 37160

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**PETER M. COUGHLAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**WILLIAM MICHAEL McCOWN**
District Attorney General

**ROBERT G. CRIGLER**
Assistant District Attorney General
One Public Square, Suite 300
Shelbyville, TN 37160

OPINION FILED _____

AFFIRMED IN PART AND MODIFIED IN PART

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Timothy Mark Redd, appeals as of right following a jury trial in the Circuit Court of Bedford County. He was convicted of attempted burglary, assault, resisting arrest, and possession of burglary tools. He argues on appeal (1) that the evidence was insufficient to support the conviction for assault, (2) that the trial court erred by not merging the conviction for possession of burglary tools with the conviction for attempted burglary, (3) that the trial court erred by not merging the conviction for resisting arrest with the conviction for assault, (4) that the trial court erred by ordering consecutive sentencing, and (5) that the trial court erred by ordering a sentence of split confinement for the conviction of attempted burglary. We affirm the convictions and sentences, but modify the manner of service.

Following a sentencing hearing, the trial court entered judgments sentencing Defendant in the following manner:

| | |
|---|---|
| Count 1, attempted burglary | 1 year, 9 months, T.D.O.C., to be served in Community Corrections , with 365 days incarceration in Bedford County Jail, day for day |
| Count 2, assault | 11 months, 29 days, Bedford County Jail |
| Count 3, resisting arrest | 4 months, Bedford County Jail |
| Count 4, possession of burglary tools | 9 months, Bedford County Jail |

The judgments also ordered that the sentence in Count 1 (attempted burglary) is to be served concurrently with the sentence in Count 4 (possession

of burglary tools), and that these sentences are to be consecutive to sentences imposed in Marshall County cases. The sentence imposed for Count 2 (assault) was ordered to be served concurrently with the sentence imposed in Count 3 (resisting arrest). However, the trial court ordered the sentences in Count 2 and Count 3 to be served consecutively to the sentences imposed in Count 1 and Count 4. The record reflects that at the time Defendant was sentenced in the cases involved in this appeal, he was serving a sentence for Marshall County convictions which involved 9 months incarceration.

In essence, in the cases presently before this court, the trial judge ordered Defendant to serve a sentence of 1 year, 9 months on Community Corrections, which included 365 days of incarceration in the Bedford County Jail, to be followed by a sentence of incarceration in the Bedford County Jail for 11 months, 29 days with a minimum service of 75% of this sentence prior to release. A literal reading of the sentence would involve the Defendant serving 365 days in jail, followed by 9 months release in the Community Corrections program, and then followed by service of at least 75% of an 11 month, 29 day sentence of incarceration in the Bedford County Jail.

SUFFICIENCY OF THE EVIDENCE

The only conviction for which Defendant challenges the sufficiency of the evidence is the conviction for assault. He concedes that the evidence was sufficient to convict him of the remaining three charges of attempted burglary, resisting arrest, and possession of burglary tools. Defendant argues that at no

time during his arrest did he commit any overt act, other than an idle threat, to place anyone in imminent fear of bodily injury.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (1973).

Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

On September 7, 1995, Willard Baker, owner and manager of Shelbyville Supermarket, was working alone in the back of the store after it had closed for the day. He heard a noise that sounded like it was on the roof, and it got louder

as he followed it outside. He walked to the overhang and could hear the noise directly over his head. After a few seconds, he walked back inside the store and called the police. The police arrived about one minute later at approximately 9:40 p.m. Baker saw two or three cars arrive at the front parking lot and two cars arrive in back. He pointed towards the roof where he heard the noise.

Officer James Wilkerson of the Shelbyville Police Department arrived at the Shelbyville Supermarket after hearing from the police dispatcher that someone was attempting to gain entry to the store. He pulled in toward the back of the building and was the first police officer to arrive. When he shined his spotlight onto the roof, he saw the Defendant running across the roof towards him. Wilkerson stopped his car and ran to the building. Defendant jumped from the roof area onto some coolers, and then jumped down to a loading dock where Wilkerson was standing. The men stood within arms reach when Wilkerson ordered Defendant to drop the black bag he was carrying and drop to the ground.

While holding the bag with his left hand, Defendant stuck his right hand in the bag and partially pulled out something. Wilkerson could only see part of the small, black object. Defendant said something to the effect that "we would all die." Wilkerson presumed that Defendant "had a bomb the way he said we would all die." Wilkerson stated that at the time he was in fear of imminent bodily injury and had drawn his weapon. While Wilkerson repeatedly ordered Defendant to drop the bag and get on the ground, Defendant refused to comply and continued to threaten Wilkerson.

At about that time, Officers Marsh, McKee, and Arrington arrived on the scene. Marsh was first, and he testified that after he arrived he was running around the building when he heard Wilkerson asking for help. He saw that the subject had a bag with his hand stuck in the bag and heard him say that "he would take all of us out." McKee, who drove up as backup behind the store, first saw the Defendant standing between Marsh and Wilkerson, edging towards the open field. McKee got out of the car and cut in between Defendant and Wilkerson. When McKee approached Defendant, Defendant turned and told McKee that "I will take us all." At that time, McKee took Defendant's hand out of the bag and pushed it aside, then threw the bag.

Defendant began to flee on foot, but was caught by Arrington. Arrington had arrived at the store with Marsh in the front parking lot. He had gone to the northwest corner of the building until he heard an officer behind the store request assistance. He ran to the rear of the store and saw Defendant fleeing. Arrington grabbed Defendant and the two fell to the ground in a struggle. All the officers at the scene assisted Arrington as Defendant resisted arrest by first swinging his arms and then putting his arms underneath his body where they could not put handcuffs on him. After the Defendant was placed in the patrol car, Wilkerson found the bag Defendant had been holding. He checked to see if a weapon was inside. Wilkerson found various burglary tools inside the bag and identified these at trial.

Officer Wilkerson drove Defendant to the police station where Chris Szaroletta, a police investigator, was called in to take a statement from the Defendant. Szaroletta testified that Defendant, after waiving his rights, voluntarily

made a statement admitting his attempted entry into the store, that he removed some screws from panels on the store's roof, and that the burglary tools belonged to him. This statement was admitted into evidence. No proof was offered by the defense.

Under Tennessee Code Annotated section 39-13-101(a)(2), a person commits assault if he intentionally or knowingly causes another to reasonably fear imminent bodily injury. During his testimony, Officer Wilkerson stated that the Defendant's actions of pulling a small, black unidentifiable object out of his bag and threatening that "we will all die" caused him to reasonably fear imminent bodily injury. In fact, Wilkerson was sufficiently concerned for his safety to draw his weapon as an attempt at some form of self-defense. The State proved beyond a reasonable doubt that Defendant pulled an unidentifiable object out of his bag and threatened Officer Wilkerson, and that Wilkerson reasonably feared imminent bodily injury. See State v. Wilson, 924 S.W.2d 648, 650 (Tenn. 1996).

In addition to the Defendant's act and Wilkerson's fear, the assault statute requires proof of criminal intent, or mens rea. That criminal intent requires that Defendant acted either intentionally or knowingly. Defendant argues that his overt acts were only "idle threats" which do not give rise to intent under the meaning of the statute. It is not necessary that intent be found solely from direct evidence as a crime may be established by circumstantial evidence alone. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). The law provides that mens rea, even the malicious intent to kill, can be inferred from circumstances of conduct giving rise to the crime. See State v. Smith, 751 S.W.2d 851, 855 (Tenn. Crim. App. 1988).

The Defendant's indictment charged that the Defendant "intentionally or knowingly did cause Officer James E. Wilkerson . . . to reasonable fear imminent bodily injury." A person acts intentionally "with respect to the nature of the conduct when it is the person's conscious or objective desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a). There is sufficient circumstantial evidence for the jury in this case to have concluded beyond a reasonable doubt that Defendant acted with the required mens rea when he threatened Officer Wilkerson. Upon appellate review, the State is entitled to the strongest view of the evidence and the inference that Defendant was aware that the threat would cause Wilkerson to fear imminent bodily injury, which satisfies the mens rea requirement of "knowingly." This issue has no merit.

MERGER OF CONVICTIONS

Defendant argues the trial court erred in failing to merge count four, possession of burglary tools, with count one, attempted burglary. He alleges that "but for the burglary tools in his possession, the Defendant could not be convicted of attempted burglary." Defendant also claims that as the crimes of assault, count two, and resisting arrest, count three, both contain the statutory element of fear, these two crimes should merge. See Tenn. Code Ann. §§ 39-13-101 and 39-16-602.

The resolution of this issue requires a weighing of the following four factors: "(1) a Blockburger analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac, of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and

(4) a comparison of the purposes of the respective statutes." State v. Denton, 938 S.W.2d 373, 381 (Tenn. 1996); see Blockburger v. U.S., 284 U.S. 299 (1932); Duchac v. State, 505 S.W.2d 237 (Tenn. 1973). In Blockburger, the United States Supreme Court held that in sustaining multiple convictions from a single set of circumstances where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Blockburger v. U.S., 284 U.S. at 304. The Tennessee Supreme Court has held that "if the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes." Duchac, 505 S.W.2d at 239 (citations omitted).

Tennessee Code Annotated section 39-14-701 defines the offense of possession of burglary tools as possession of "any tool, machine or implement with intent to use the same, or allow the same to be used, to commit any burglary. . . ." The offense of burglary is defined by statute as when a person, "without the effective consent of the property owner, enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(1). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . acts with intent to complete a course of action or cause a result that would constitute the offense . . . and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3).

The statutory provisions of attempted burglary and possession of burglary tools require proof of at least one different element in each offense; the same evidence is not required to prove both offenses; the offenses involved concerned two discrete acts by the Defendant; and the offenses protect different interests. The trial court correctly noted that a person could commit an attempted burglary without the possession of burglary tools, and that not only did Defendant possess a screwdriver with which he was attempting to enter the building, he possessed numerous other burglary tools which were introduced into evidence. Similarly, the Defendant's possession of burglary tools did not infer that he "entered" a building for the purpose of committing a burglary, only that the Defendant had the intent to commit a burglary. In Duchac, a similar conviction was upheld involving the offenses of third degree burglary and possession of burglarious instruments. Id. at 240. The mere fact that both offenses grew out of a single criminal episode does not make them a single case in this instance. Id.

Counts two and three warrant the same analysis as above. A person commits assault who "intentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). A person who intentionally prevents or obstructs "anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at such officer's direction, from effecting a[n] . . . arrest . . . of any person, including the defendant, by using force against the law enforcement officer or another" commits the offense of resisting arrest. Tenn. Code Ann. § 39-16-602(a). These offenses also are separate and distinct offenses which require proof of different statutory elements and evidence, involve separate discrete acts by the Defendant and have multiple victims (all of the arresting officers versus

Officer Wilkerson), and protect differing interests.  See Blockburger, 284 U.S. at 304.  This issue is without merit.

SENTENCING

When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then

we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

CONSECUTIVE SENTENCING

Defendant argues the trial court erred by ordering his sentences to be served consecutively. Upon review of the record, it is evident that the trial court imposed consecutive sentences based upon the fact that Defendant committed these offenses while he was on probation for offenses he committed in another county. Tennessee Code Annotated section 40-35-115(b)(6) states that a defendant convicted of more than one (1) criminal offense can be ordered by the court to serve consecutive sentences if the defendant is sentenced for an offense committed while on probation.

Furthermore, the trial court found that an extended sentence was necessary to restrain the Defendant from committing other offenses, thereby protecting the public from Defendant's further criminal conduct. See State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). The trial court also noted that this offense was serious in that it "could have led to the injury of the [police] officers." Due to the severity of Defendant's acts, the consecutive sentence imposed reasonably relates to his crimes. Id. at 939. This issue has no merit.

ALTERNATIVE SENTENCING

Defendant argues that the trial court erred by ordering him to serve his 1 year, 9 month sentence for attempted burglary in Community Corrections as a

form of alternative sentencing. Defendant claims that he did not request such a form of sentencing, and, therefore, has not met his burden of proof of entitlement to alternative sentencing. Defendant was sentenced to serve a split sentence in Community Corrections of 365 days, day for day, on his felony sentence of one year and nine months, but was not granted alternative sentencing on the misdemeanor sentence of eleven months and twenty-nine days, to be served at the rate of seventy-five percent (75%).

Trial courts have the authority to place a defendant into "Community Corrections program[s] whether there is a written application or not." State v. Estep, 854 S.W.2d 124, 127 (Tenn. Crim. App. 1992). However, Tennessee Code Annotated section 40-36-106(a)(7) explicitly provides that "[P]ersons who are sentenced to incarceration or on escape at the time of consideration will not be eligible [for Community Corrections]."

At the time of the sentencing hearing, Defendant was sentenced to incarceration on the Marshall County convictions. In addition, Defendant was sentenced to incarceration for the misdemeanor assault in this case in Bedford County. Therefore, the Defendant was not eligible to be sentenced to Community Corrections.

Nevertheless, it is apparent from the record that the trial court felt that alternative sentencing of split confinement was the most appropriate sentence for Defendant in this case. We agree. Therefore, even though Defendant is not statutorily eligible to be placed into the Community Corrections program, we affirm the length of the sentences and the order of consecutive sentencing as set

-13-

forth by the trial court, but modify the judgments to reflect that Defendant is sentenced to serve the conviction for attempted burglary in the Bedford County Jail, with a split confinement involving incarceration for 1 year, followed by probation for 9 months. This sentence is to follow and thus be served consecutively to and after the sentence of 11 months, 29 days in the Bedford County Jail for the conviction of assault in Count 2. <u>See</u> Tenn. Code Ann. § 40-35-306. The judgments, as modified, are hereby affirmed.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JOSEPH B. JONES, Presiding Judge

_____
WILLIAM M. BARKER, Judge