STATE of Tennessee, Petitioner,

v.

Ronnie WILSON, Respondent.

Supreme Court of Tennessee.

Oct. 10, 1977.

Brooks McLemore, Jr., Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, for petitioner.

Fred L. Myers, Jr., Myers & Myers, Newport, for respondent.

## OPINION

FONES, Justice.

Defendant was indicted for second degree murder, convicted of voluntary manslaughter and sentenced to not less than three (3) years nor more than five (5) years in the penitentiary.

The Court of Criminal Appeals reversed and dismissed, and we granted the State's petition for writ of certiorari.

In an opinion written by Judge Galbreath and concurred in by Judge Daughtrey, a majority of that Court reached the conclusion that the facts made out a "classic instance of self defense."

Judge O'Brien dissented. He correctly observed that the issue of self defense was not raised in that Court and expressed the opinion that the verdict was supported by ample evidence that the homicide was the result of an unwarranted, forcible armed attack on the victim.

We reverse the Court of Criminal Appeals and reinstate the conviction and sentence.

The episode took place at Curve Tavern where defendant was the bartender and Sammy Webb, the victim, was a patron. Webb had been drinking beer for several hours and became embroiled in a controversy with another patron; thereafter a controversy developed between Webb and defendant followed by a physical encounter.

All witnesses agreed that defendant was sober and that Webb was drunk, but the other material facts were disputed. Webb may have precipitated the altercation by throwing an ash tray at defendant, which according to some witnesses, missed its mark, but was said by defendant to have struck him on the arm.

The State's proof was that Webb and defendant struck at each other across the bar with their fists; that defendant then obtained from behind the bar a short club with a knot on the end and struck Webb in the head, knocking him to the floor; that defendant then came from behind the bar and hit Webb several times in the head with the club, while he was still lying on the floor; that the only action taken by Webb after defendant armed himself with the club was to throw up his arm to ward off the blows; that defendant ordered him to leave and he crawled out on his hands and knees. Approximately two (2) hours later Webb appeared at the door of his girl friend's home, battered and bloody. He wanted to return to the Curve Tavern with a gun, but after she cleaned up his wounds he went to sleep on the couch. The following morning she was unable to awaken him and he was taken to the hospital, where an unsuccessful operation was performed to stop intercranial bleeding and remove blood clots that had formed on the right side of the brain. The pathologist, who performed an autopsy, testified that the bleeding caused the brain to swell and shift downward and resulted in hemorrhages in the brain stem, the connecting pathway to the spinal cord, and pulmonary edema; that these conditions combined to cause Webb's death. From his observation of the abrasions on Webb's head and the blood clots beneath his skull he was of the opinion that Webb had sustained more than one hard blow to the head.

In contrast to this version, defendant and his witnesses denied the existence or use of a club; they testified that Webb threw a salt shaker at another patron and defendant told him he would have to pay for it; that he cursed defendant and struck back with his fist hitting Webb only one time, causing no apparent injury; that defendant did come from behind the bar and may have swung at Webb another time but missed; that defendant then told Webb to leave, and may have pushed or shoved him, but that Webb walked out of the tavern unassisted, unblooded and uninjured. The two miles of road from the tavern to Webb's girl friend's house was described as heavily

travelled, with creeks, bridges and high rocky banks.

Defendant's evidence supported the theory that Webb assaulted defendant first; that he resisted and struck back with his fists; that no club or any other weapon was used and no injury inflicted upon Webb that could possibly have caused death; that the injuries that caused his death were sustained in some unknown manner after he left the tavern.

■ To excuse a homicide on the ground of self-defense, the defendant must show that *at the time of the killing* he was acting upon a well founded fear of death or great bodily harm to himself, and that the actions he took were necessary in self-defense. *State v. McCray,* 512 S.W.2d 263 (Tenn. 1974); *Nance v. State,* 210 Tenn. 328, 358 S.W.2d 327 (1962); *Cathey v. State,* 191 Tenn. 617, 235 S.W.2d 601 (1951).

■ In a homicide case, the invocation of that defense presupposes that defendant killed the victim. In this case, defendant denies that he killed Webb.

There is no evidence in this record to support an alternate theory that, if the jury should believe the State's evidence that defendant used a club and struck Webb in the head, causing his death, that defendant was justified in using that degree of force because of a genuine fear that he was in danger of death or great bodily harm.

The issue presented to the jury was whether to believe the State's proof that defendant had used a club, and caused the death of Webb, or to accept the defendant's proof that he had not used a club, did not kill Webb and that his death was the result of some misadventure that occurred during the two mile, two hour journey to his girl friend's house.

■ The jury decided the issue in favor of the State's theory and the trial judge approved the verdict. In our opinion the evidence does not preponderate against that verdict.

In *State v. Johnson,* 541 S.W.2d 417 (Tenn.1976), we quoted with approval the following from *State v. Grace,* 493 S.W.2d 474 (Tenn.1973):

"Neither this Court, nor the Court of Criminal Appeals, is free to re-evaluate the evidence as it pleases. A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

The judgment of the Court of Criminal Appeals is reversed and the conviction and sentence reinstated.

COOPER, C. J., and HENRY, BROCK and HARBISON, JJ., concur.