# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 20, 2001 Session

## STATE OF TENNESSEE v. TORREY LYONEL FRAZIER

**Direct Appeal from the Criminal Court for Roane County**
**No. 11903      E. Eugene Eblen, Judge**

_____

**No. E2000-01364-CCA-R3-CD**
**December 19, 2001**
_____

A Roane County grand jury indicted the defendant on one count of first degree premeditated murder. Following a jury trial, he stood convicted of second degree murder. For this offense he received a twenty-two year sentence as a violent offender. After unsuccessfully pursuing a motion for a new trial, the defendant brings the present appeal to this Court raising four issues. More specifically, he avers that (1) the evidence is insufficient to support his conviction; (2) the trial court erred in admitting into evidence a tech-nine weapon not associated with the offense; (3) the trial court erred in permitting the State to question a defense witness concerning a pending statutory rape charge; and (4) the trial court erred by sentencing the defendant to twenty-two years. Upon review of these issues, we find that all lack merit or constitute harmless error. We, thus, affirm the conviction and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Charles B. Hill, II, and Spence Bruner, Kingston, Tennessee, for appellant, Torrey L. Frazier.

Paul G. Summers, Attorney General & Reporter; Glen C. Watson, Assistant Attorney General; J. Scott McCluen, District Attorney General; and Frank A. Harvey, Assistant District Attorney, for appellee, State of Tennessee.

# OPINION

## Factual Background[1]

The undisputed proof reflects that the defendant shot the victim, Anthony Eugene Thomas, multiple times and, thereby, ended the victim's life. This incident occurred at around 1:00 a.m. on December 28, 1997, at an establishment referred to as "Skinny Miller's." While the defendant does not deny shooting the victim, he claimed and maintains that he acted in self-defense.

## Sufficiency

As aforementioned, the defendant asserts that the evidence presented at trial is insufficient to support his conviction for second degree murder. Rather, he avers that the proof supported his contention that the circumstances justified his use of deadly force.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

To establish second degree murder here, the State must have proven beyond a reasonable doubt that the defendant knowingly killed the victim. See Tenn. Code Ann. § 39-13-210(a)(1). Furthermore, according to our code "[a] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

The defendant admits that he drew a weapon from his right rear pocket and shot the victim multiple times within very close range. The autopsy report revealed that one of the bullets entered the victim's chest penetrating his stomach, right lung, and aorta. According to Dr. Charles Harlan, the forensic examiner, this shot was the primary cause of the victim's death. From this and other

---

[1] Additional relevant factual details will be provided within the analysis of individual issues.

proof, the jury could have concluded beyond a reasonable doubt that the defendant acted with an awareness that his conduct was reasonably certain to result in the victim's death.

Nevertheless, the defendant averred at trial and re-asserts through this appeal that he acted in self-defense. Tennessee defines self-defense as follows:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds.

Tenn. Code Ann. § 39-11-611(a); see also State v. Wilson, 556 S.W.2d 232, 234 (Tenn. 1977). Once properly raised, the State bears the burden of negating a claim that the accused acted in self-defense. Tenn. Code Ann. § 39-11-201(a)(3); see also, e.g., State v. Sims, 45 S.W.3d 1, 10 (Tenn. 2001). Yet as with other factual determinations, the decision concerning whether the defendant acted in self-defense is one to be made by the jury. See State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993).

In the instant case the defendant presented alleged proof that he and Quincy Willis, an associate of the victim, had been in an altercation in front of the defendant's grandmother's house about one week before the offense involved here. According to the defendant he did not originally have a gun on him when Willis approached him, but he noticed that Willis had one. The defendant, therefore, acknowledged that when Willis left to go next door, the defendant went into the aforementioned home, armed himself, and then returned to his car. At some point thereafter Willis fired at him, and he, in turn, fired at Willis. The defendant further asserted that he had heard of the victim's threatening to "shoot . . . up" the defendant's grandmother's house.

According to the defendant's account concerning the night of the victim's death, Terrell Gordon told the defendant that the victim and Willis were armed and that the defendant should watch the defendant's back.[2] The defendant further claimed that the victim had then asked to talk with him. According to the defendant's statement the following exchange took place:

> He [the defendant] said, "You know I'm West Side[.]" I said[, "]I didn't know you was [sic] nothing[."] Then he said[, "]I am[."] I said[, "Your [sic] letting that stupid ass shit come between family[."][3] He said[, "] Hell yes[."]

---

[2] The defendant did not mention this exchange in his statement to the police. Additionally, in the defendant's statement the defendant claimed to have had Gordon's gun for two months, while at trial the defendant stated that Gordon had given him the gun during this conversation at Skinny Miller's.

[3] The defendant and victim were related by marriage.

-3-

The defendant added that the victim had, thereafter, pushed him; the defendant had pushed back; the victim had seemed to reach for a gun; and fearing the victim, the defendant had pulled a gun himself and shot the victim.

On cross-examination, the defendant explained that "East Side" and "West Side" could refer to the gangs, the Bloods and the Crips respectively. He further explained that the Bloods' color was red, while the Crips' color was blue. The proof reveals that on the night of the victim's death, the victim was wearing a blue shirt. On one day of the trial, the defendant wore a red shirt and red shoes. When he was arrested, he had been wearing a bright red coat.[4] In addition, on the night of the offense, the victim had told Alice Hanks, "They don't like my color." This witness added that after the victim had been lying on the floor, the defendant had said something like, "[T]hese MF ain't [sic] going to come in my territory."[5]

Numerous witnesses indicated that earlier in the night the defendant and the victim had initially appeared to get along with one another. However, later on, the defendant and the victim began to argue. According to Wendy Ingram, the defendant then pushed the victim, pulled a weapon, and shot the victim. She added that the victim's hands had been up as if they were going to fight, and she did not recall the victim's making any movement toward his clothing prior to the shots being fired.

With regard to the whether the victim had been armed, no witness – including the defendant – claimed to have seen the victim draw a weapon prior to being shot. Nevertheless, the defendant did assert that he had seen a black handle in the victim's pants on the night in question. Furthermore, Nacie Frazier stated that she had seen something black with a square shape in the front of the victim's pants when earlier he had raised his shirt to her in a manner reflecting that he was armed.[6] Gordon also testified that he had observed Willis giving the victim a weapon outside of Skinny Miller's. Gordon believed this weapon to be a tech-nine. However, the State later admitted a tech-nine into evidence to show this type of weapon's size, thereby allowing the jury to decide whether the victim had tucked a weapon this large into his pants. In addition, the above-referenced Ingram, a licensed practical nurse who had performed CPR on the victim shortly after the shooting, stated that she had noticed no weapon when loosening the victim's clothes in an attempt to save his life. Moreover, we observe that no weapon was found on the victim or at the scene.[7]

Though we recognize that the defendant did present proof supporting his theory of self-defense,[8] we are to review the evidence in the light most favorable to the State. To that end we not

---

[4] The defendant denied involvement with either the "East Side" or the "West Side."

[5] Wendy Ingram stated that the defendant had held his weapon in the air and made a remark after the shooting though she did not testify concerning what had been said.

[6] In Frazier's statement to the police, she said that the only weapon she had seen that night was the defendant's.

[7] The defense asserted at trial that the weapon could have been taken by someone in the confusion immediately after the shooting.

[8] As additional proof, Frazier and two other defense witnesses indicated that, prior to the shooting, the victim had issued individual warnings for certain people to leave Skinny Miller's.

only note the aforementioned evidence in conflict with the defendant's claim but also facts that the jury may have considered in weighing the credibility of some of the witnesses called. For example, no proof was offered suggesting that either Ingram or Hanks, both called by the State, had close or familial ties to the defendant or the victim. However, among the defendant's witnesses were Gordon Gillespie, his uncle; Frazier,[9] his cousin; and Lisa Patterson, the mother of one of his children. Furthermore, Frazier admitted that she had been very intoxicated at the time she had given her statement on the night of the offense. Gillespie acknowledged that he had taken the defendant from the scene of the crime and had been with the defendant at the time of the defendant's arrest the day after the offense. On the latter occasion Gillespie was also armed. In addition, the defendant called Gordon, who was not only his cousin but whose testimony was also riddled with additional matters potentially calling into question Gordon's veracity.

Faced with the record presented, we, therefore, find that the jury's verdict is supported by the evidence. As such, this issue lacks merit.

### Admission of a Weapon Not Specifically Part of the Offense and of Officer Charles Moore's Testimony Related to This Weapon

Through his second issue the defendant avers that the trial court erred in allowing the admission of a tech-nine offered by the State and in permitting the investigating officer to provide testimony related to the weapon. To support this contention, the defendant states that this evidence should have been excluded under Tennessee Rules of Evidence 402, 403, 701, and/or 702. Rules 402 and 403 deal with relevance considerations, while 701 and 702 pertain to lay opinion and expert testimony respectively.

Turning first to the question of relevance, we acknowledge that evidence must be relevant and probative to an issue at trial in order to be admissible. State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996); see also Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded at trial if the probative value of that evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Tenn. R. Evid. 403. The determination of relevancy is left to the discretion of the trial court, and this Court will not overturn a trial court's determination in this regard in the absence of an abuse of discretion. State v. Williamson, 919 S.W.2d 69, 78-79 (Tenn. Crim. App. 1995); State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

In the instant case Gordon, the defendant's first witness, alleged that Willis had handed the victim a weapon outside of Skinny Miller's. Gordon added that the weapon had looked "like a tech-nine or something." Defense counsel then began asking questions about the size of a tech-nine and whether the victim's coat had been large enough to conceal a weapon of this type. Furthermore, defense counsel returned to this topic on re-direct eliciting more specific testimony concerning the victim's hiding of the weapon. According to Gordon he saw the victim place the weapon in the back

---

[9] Admittedly, Frazier was also occasionally dating the victim at the time of the offense.

of the victim's pants under the aforementioned jacket.  This witness added that a tech-nine was not too big to carry in that manner.  In view of this line of questioning, the defendant opened the door and made the tech-nine relevant; thus, this contention lacks merit.[10]

However, as above-noted, the defendant also alleges that the trial court did not comply with Tennessee Rules of Evidence 701 and 702 by admitting additional proof related to the tech-nine. Rule 701 essentially addresses the admissibility of opinion testimony offered by non-experts.  The rule provides, in relevant part:

> (a) . . . If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
> (1) rationally based on the perception of the witness and
> (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Tenn. R. Evid. 701(a).  Furthermore, the admission of expert testimony is governed by the aforementioned Rule 702, which states that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Caselaw has also clarified that evidence is "'scientific, technical, or other specialized knowledge' if it concerns a matter that 'the average juror would not know, as a matter of course . . . .'" State v. Murphy, 953 S.W.2d 200, 203 (Tenn. 1997) (quoting State v. Bolin, 922 S.W.2d 870, 874 (Tenn. 1996)).

Returning to the relevant facts of the instant case, the contested testimony came as rebuttal proof from Investigator Moore.  This witness was shown the weapon and asked if he could recognize the type. Moore responded that it was a tech-nine and subsequently affirmed that he was "generally familiar with this" weapon.[11] The following exchange then transpired:

Q [Prosecutor]     The pistol you just had in your hand there, the clip, let me ask you about the clip. Can you get different length clips for this weapon?

A [Moore]          Yes.

_____

[10] During cross-examination of the defendant, the prosecution produced a tech-nine. Since the defendant claimed to have seen the handle of a weapon in the victim's pants, the State asked the defendant to place the tech-nine into his pants and to draw the weapon. Through this exchange the defense raised no objection. Nevertheless, when the State asked that the weapon be passed to the jury, the defense objected because the defendant himself had not specifically claimed that a tech-nine was involved. Later the defense objected once more, this time contesting the size of a clip mentioned by the State. Though the trial court overruled both objections, it did so in the latter instance "with the instruction to the jury that this is not alleged to be the gun that was there. We're merely talking about a type of weapon."

[11] At this juncture defense counsel objected, but on a basis not pursued in this appeal; thus, we need not address it here.

| Q [Prosecution] | And is the clip that's in there now a particularity [sic] large clip or a small clip? |
|---|---|
| A [Moore] | This is a small clip. This is probably the smallest one I've seen for this type of weapon. |
| [Defense counsel] | Your honor, I object at this time. There is no testimony that this person is an expert on the tech[-]nine, that he is a manufacturer. And I object to this line of testimony. |
| [Trial court] | Overruled. |
| [Prosecution] | Nothing further. |

At the outset we observe that the State neither claimed nor did the trial court find that Moore was testifying as an expert witness. Furthermore, the defendant did not object when the witness began discussing different size clips but only did so after Moore stated that the clip before him was the smallest that he had seen for a tech-nine. To offer this type of proof, a witness need not be characterized as an expert. As such, its admission did not run afoul of Rule 702.

In addition, we note that defense counsel did not object to Moore's testimony as being improper lay opinion testimony. It is well-settled that an appellant cannot change grounds for objections from the trial court to the appellate court. Such action constitutes waiver of the issue. State v. Brewer, 932 S.W.2d 1, 9 (Tenn. Crim. App. 1996); Matthews, 805 S.W.2d at 781; State v. Aucoin, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988). Moreover, we do not see that Moore's statements constituted lay opinion testimony;[12] thus, Rule 701 does not bar the admission of this evidence either. We, therefore, conclude that this issue merits no relief.


## Use of Pending Charge for Impeachment Purposes

The defendant next contends that the trial court erred in permitting the prosecution to cross-examine Gordon concerning a pending charge of statutory rape. In support of this position, the defendant cites Tennessee Rule of Evidence 608.

Subpart (b) of this rule provides, in pertinent part:

Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or

---

[12] Though the defendant cited Rules 701 and 702, he provided no case law related to this portion of the claim. Furthermore, the State did not respond to this portion of the issue. Nevertheless, from our review we find the cases dealing with lay opinion distinguishable from the situation presented here.

> untruthfulness of another witness as to which the character witness being cross-examined has testified.

Tenn. R. Evid. 608(b). In addition, prior to admitting such proof, other procedural steps must be taken and determinations made. For example, "[t]he court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry." Tenn. R. Evid. 608(b)(1).

In this case, Gordon attempted to explain that he could not assuredly state when the aforementioned prior altercation had occurred because he had "problems of [his] own." Thereafter, the prosecution inquired whether any of these problems involved "the law." After the defendant replied, "Yeah, quite a few of them," the defense interposed a general objection. The prosecution responded that it could ask about bad acts if it had a "reasonable basis on which to do so," and the trial court overruled the objection. The prosecution then asked if the witness' difficulties "[i]nclud[ed] a possible problem with a statutory rape?" After noting that there had been no conviction, the defense requested a jury-out hearing. Yet again, the trial court allowed the prosecution to proceed with this line of questioning. No jury-out hearing was conducted.

Through its brief the State concedes that the trial court's actions constituted error. In view of these facts and the above guidelines, we agree.[13] The trial court did not conduct the required jury-out hearing. Furthermore, the conduct inquired about here is not probative of truthfulness or the lack thereof. See, e.g., State v. Leon Hurd, No. E1999-01341-CCA-R3-CD, 2001 WL 348871, at *14 (Tenn. Crim. App. at Knoxville, April 10, 2001).

Nevertheless, we also concur with the State's assessment that this erroneous admission was harmless in this case because Gordon provided the jurors with additional reasons to question his testimony. For example, the witness admitted that he did not have a permit to carry the gun he had provided to the defendant nor had he ever had a permit to carry a concealed weapon. In response to the prosecutor's asking what kind of weapons the witness had in his car that night, Gordon responded, "What kind you [sic] want? I have a lot of them." Gordon exuded this combative attitude at various times throughout his testimony. Additionally, this witness affirmed that he had no use "whatsoever" for anyone in law enforcement and acknowledged that he had told the police that he did not know anything about the prior altercation between the defendant and Willis though he had such knowledge and testified at trial concerning this event. With respect to the latter, he claimed that he "wasn't under oath, so it doesn't matter. [He] could say whatever." We also observe that Gordon's testimony conflicted at times with even the defendant's pre-trial statement that had been submitted as evidence. In view of these concerns and the remainder of the proof against the defendant, we do not find that the error involved here merits a reversal.

---

[13] Though defense counsel should have stated the basis of his objection, the State's response made clear by inference that it believed the evidence admissible under Rule 608. Furthermore, the defense thereafter requested a jury-out hearing.

**Sentencing**

Finally, the defendant avers that the trial court erred in sentencing him to serve twenty-two years. In asserting that the sentence received was too harsh, the defendant contends that "his age ... and the circumstances of the shooting" should lead to a shorter period of confinement.

"When reviewing sentencing issues ..., the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Id.

Turning more specifically to the facts of this case, the defendant was convicted of second degree murder. Since this is an A felony, the starting point for sentencing determinations is the middle of the range. See Tenn. Code Ann. § 40-35-210(c). Undisputably, this defendant was a Range I offender; thus, twenty years was the mid-point against which the trial court was to balance any mitigating and enhancement factors.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

From reviewing the record, we observe that the lower court stated that it did "not find the mitigating factors to outweigh anything in this particular case."[14] In contrast, the defendant first argues that his age should have contributed to his receiving a shorter sentence. This relates to Tennessee Code Annotated section 40-35-113(6), which states that "[t]he defendant, because of youth or old age, lacked substantial judgment in committing the offense." Id.

However, a defendant's chronological age is not determinative with regard to this mitigating factor. To determine whether this factor should be utilized, courts are to "consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability

---

[14] While the trial court could have more clearly set out any mitigating factors it found applicable, this statement reflects that the trial court did, in fact, consider mitigating factors but concluded that they should be afforded little weight here.

or inability to appreciate the nature of his conduct." <u>State v. Robert D. Merritt, Jr.</u>, No. 01C01-9709-CR-00396, 1999 WL 298311, at \*2 (Tenn. Crim. App. at Nashville, May 13, 1999).

The record before us notes no problem with this defendant's mental development or capacity and affirmatively indicates that he attended school into the eleventh grade. The defendant had also fathered three children, was well-acquainted with the criminal justice system, etc. While he was twenty-years-of-age at the time of the offense, our supreme court has previously held that the application of this factor to a particular twenty-year-old defendant would not be warranted. <u>Id.</u> Faced with these considerations, we agree that this factor should not result in a shorter sentence for the defendant than that received.

As noted above, the defendant also argues that the circumstances of the offense should have decreased the penalty he received. <u>See</u> Tenn. Code Ann. § 40-35-113(11). However, he cites this Court to no analogous situation in which this factor was applied, and we do not find this allegation persuasive.

With regard to enhancement factors, the trial court found two applicable. The lower court first pointed to the fact that the defendant was out on bond at the time of the offense. This determination clearly refers to the enhancement factor found in Tennessee Code Annotated section 40-35-114(13)(A) and is uncontested in the defendant's brief. However, this factor only applies when the defendant is on bond from a prior felony charge and is ultimately convicted of the prior felony. <u>See</u> <u>id.</u> From our reading of the record, the defendant had made bond on a misdemeanor; thus, this would not apply. Nevertheless, the trial court also found it appropriate to apply Tennessee Code Annotated section 40-35-114(1) as an enhancing factor since the court pointed to the defendant's prior cocaine and numerous misdemeanor convictions. Beyond this, the trial court could have applied the enhancement factor dealing with the defendant's "possess[ing] or employ[ing] a firearm ... during the commission of the offense." <u>See</u> Tenn. Code Ann. 40-35-114(9).[15]

In view of these considerations and the fact that the trial court only enhanced the defendant's sentence by two years, we find that the defendant has failed to prove that the sentence imposed is improper. This issue, therefore, also lacks merit.

## <u>Conclusion</u>

For the foregoing reasons we find that none of the issues raised merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

---

[15] The defendant does not contest that he used a firearm in committing the offense, and utilization of a firearm is not an element of the offense of second degree murder. <u>See</u> Tenn. Code Ann. § 39-13-210. Thus, this enhancement factor may appropriately be applied here.